**AMENDED DLD-354**                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3250
_____

DOUGLAS E. HUMPHREY,
Appellant

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS; BRIAN
COLEMAN, JOINTLY AND SEVERALLY SUED IN THEIR INDIVIDUAL AND
OFFICIAL CAPACITIES; VINCENT R. MAZESKI, JOINTLY AND SEVERALLY
SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES; CAPTAIN
TREMPUS, JOINTLY AND SEVERALLY SUED IN THEIR INDIVIDUAL AND
OFFICIAL CAPACITIES; OFFICER PENDLETON; OFFICER SKOBOL, JOINTLY
AND SEVERALLY SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 14-cv-01349)
District Judge:  Honorable David S. Cercone
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
September 14, 2017

Before: CHAGARES, VANASKIE and KRAUSE, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 20, 2017)

_____

OPINION*

_____

PER CURIAM

Douglas Humphrey, a Pennsylvania state prisoner, appeals from the District Court's order granting defendants' motion to dismiss his civil rights complaint. For the following reasons, we will summarily affirm the judgment of the District Court.

Humphrey filed a "replevin action" ("Case A") and an action to enforce a "settlement agreement" ("Case B") in Pennsylvania state court. He alleged in the instant complaint that, in response to adding the Pennsylvania Department of Corrections (DOC) and "John Doe" as defendants to Case A, his legal materials were confiscated from his prison cell, preventing him from properly litigating his cases. Humphrey asserts that the defendants, all employees of either the DOC or SCI-Fayette, acted to deprive him of, inter alia, his due process rights and his right to access the courts. He sought declaratory relief and damages for violations of his First, Fourth, Fifth, and Fourteenth Amendment rights. The District Court, adopting the Magistrate Judge's Report and Recommendation (R&R), dismissed the complaint for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6).[1] Humphrey filed a timely notice of appeal, which became effective after

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] The Court also declined to exercise supplemental jurisdiction over several state law claims.

2

the District Court denied his timely motion for reconsideration filed pursuant to Fed. R. Civ. P. 59(e).  See Fed. R. App. P. 4(a)(4)(B)(i).

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over the dismissal.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To survive dismissal, a complaint must "state a claim to relief that is plausible on its face" by including facts which "permit the court to infer more than the mere possibility of misconduct."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

Humphrey first maintained that defendants Mazeski, Trempus, Skobol, and Pendleton violated his First Amendment right to access the courts by confiscating all of the legal materials for his cases.  He alleged that, without the materials, he was unable to serve copies of his complaint on the two added defendants in Case A, or copies of his amended complaint on the defendants in Case B, resulting in the dismissal of both cases and injury in the form of "property" and "financial loss."  The District Court properly concluded that Humphrey failed to allege sufficient factual allegations to state a claim for relief.  In a denial-of-access case, a prisoner must demonstrate "actual injury" stemming from the violation by showing that the underlying claim was non frivolous.  See Lewis v. Casey, 518 U.S. 343, 351-53 (1996).   It is clear from the complaint that the underlying actions are specious and lack an arguable basis in law.

The state cases stem from a series of letters, documents, and "notices" Humphrey sent to a Pennsylvania district attorney ("D.A.") alleging that "government bonds had been created" using his "personal identifying information" in his state "habeas corpus

3

petition" and were traded as part of a fund valued at $4.83 billion. He asserted that the D.A.'s failure to respond to these correspondences resulted in a "contractual (settlement) agreement" whereby the D.A. was liable to Humphrey for the "sum." Humphrey next sought to enforce the agreement by submitting "tort claims" to insurance providers for the state of Pennsylvania. Upon their failure to respond or "settle the matter," Humphrey sent the providers a "notice of default" resulting, he maintained, in an "implied contract." The complaint alleged that "[b]ased upon the agreements and stipulations, District Attorney [and the providers] became lien debtors with the property (property right) attaching and . . . agreed to be subject to full liability as bonding/insurance provider or otherwise, allowing lien to be filed on all property, assets, accounts, to establish and attach to the lien for the sum certain for 'full satisfaction and accord' on behalf of [Humphrey]." Compl. at ¶ 107. Humphrey then filed Case A, a "replevin action" through which he sought to recover his "property," and Case B to enforce the "settlement agreement."

Both underlying suits are patently frivolous in nature. At a minimum, as the District Court noted, there was clearly neither a "settlement agreement" between Humphrey and the D.A., nor an implied contract between Humphrey and the state agents. Basic contract law requires an offer and acceptance, and a meeting of the minds on material terms, both of which were lacking. See Moser Mfg. Co. v. Donegal & Conoy Mut. Fire Ins. Co., 66 A.2d 581, 582 (Pa. 1949); Mazzella v. Koken, 739 A.2d 531, 536

4

(Pa. 1999) ("To be enforceable, a settlement agreement must possess all of the elements of a valid contract.").

Humphrey also alleged that, in retaliation against him for adding the DOC as a defendant to Case A, Mazeski ordered that Humphrey's legal materials be confiscated. As a direct result, he maintained, both Cases A and B were dismissed. A prisoner alleging retaliation in violation of the First Amendment must show (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by prison officials sufficient to deter him from exercising his constitutional rights; and (3) that there is a causal link between the exercise of his constitutional rights and the adverse action taken against him. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). We are doubtful about the District Court's conclusion that Humphrey had not sufficiently pleaded an adverse action, as a retaliatory search and seizure may be sufficient to satisfy this prong of the claim. See Bell v. Johnson, 308 F.3d 594, 604 (6th Cir. 2002) (citing cases).[2] Also, the District Court should not have relied on its conclusion that prior searches of Humphrey's cell had not deterred him from filing suits. The second prong of a retaliation claim is not a subjective inquiry. See Bistrian v. Levi, 696 F.3d 352, 376 (3d

---

[2] Bernard admitted that some of the papers confiscated were UCC materials. See generally Monroe v. Beard, 536 F.3d 198, 207–10 (3d Cir. 2008) (holding that the DOC's policy permitting the confiscation of UCC materials is not constitutionally unreasonable because it advances an interest in preventing prisoners from filing fraudulent liens). Although "prison officials may [ ] prevail [on a retaliation claim] by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest," Rauser, 241 F.3d at 334, dismissal on this basis in this case would have been premature at the motion-to-dismiss stage.

5

Cir. 2012). Rather, it "is an objective inquiry and ultimately a question of fact." Id. The question is not whether Humphrey was deterred, but whether "a person of ordinary firmness" would be deterred. Id. (quotation marks omitted). Nevertheless, the claim was subject to dismissal because Humphrey had not engaged in constitutionally protected conduct. See Brennan v. Norton, 350 F.3d 399, 417 (3d Cir. 2003) (stating that filing a federal complaint qualifies as petitioning the government and is, therefore, protected so long as the complaint is not frivolous); see also Ross v. Dist. Att'y of the Cty. of Allegheny, 672 F.3d 198, 213 n.12 (3d Cir. 2012) (noting that we can affirm on an alternative basis). There is simply no constitutional right to prosecute frivolous litigation. See Brennan, 350 F.3d at 417; see also Heron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000).

Humphrey next alleged that defendants Mazeski and Trempus conspired to confiscate his legal materials and deny him access to the courts, and that defendant Coleman conspired with them to deny his grievance towards the same end. As the District Court noted, a civil conspiracy claim is not actionable without a viable underlying tort claim. See Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003). Because there is no merit to the underlying access to the courts claim, the conspiracy claims fail as a matter of law.

We agree with the District Court that, to the extent Humphrey claimed that the seizure of his legal materials was a violation of the Fourth Amendment, he failed to state a claim for relief because the Fourth Amendment has no applicability to the contents of a

6

prisoner's cell. See Hudson v. Palmer, 468 U.S. 517, 536 (1984); cf. Parkell v. Danberg, 833 F.3d 313, 325 (3d Cir. 2016) (recognizing a Fourth Amendment right against the unreasonable search of an inmate's body). In addition, because he has an adequate post-deprivation remedy, both through the prison grievance process and in state tort law, any alleged due process claims with respect to the confiscation of his legal materials also fail. Id. at 533; see also 42 Pa. Cons. Stat. Ann. § 8522(b)(3).

Finally, dismissal of Humphrey's remaining claims brought pursuant to 42 U.S.C. §§ 1981, 1982 & 1985(3) was proper as he wholly failed to allege that defendants' actions were motivated by any racial or invidious class-based discriminatory animus. See Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001) (construing §§ 1981 & 1982); Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006 (construing § 1985(3)).[3]

Because we find that the appeal presents no substantial question, we will summarily affirm the District Court's order. Humphrey's motion for a stay is denied.

---

[3] Additionally, the District Court justifiably declined to exercise supplemental jurisdiction over Humphrey's state law claims. See 28 U.S.C. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (holding that when federal claims are dismissed before trial, federal courts should not separately entertain pendent state claims).